

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-09-097-CR

PEDRO REYES                                                          APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

A jury found Appellant Pedro Reyes guilty of aggravated assault with a deadly weapon, and the trial court sentenced him to twenty years' confinement. In two issues, Reyes argues that factually insufficient evidence exists to sustain his conviction and that he received ineffective assistance of counsel. We will affirm.

---

[1] See Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Joe Portales went to Buffalo Wild Wings one night to watch a boxing match. Reyes, Oscar Rodriguez, J.J. Garcia, Roger Garcia, and Bobby Mathis were also there. The entire group, who knew each other from high school in Lake Worth, went to Aqua Lounge to continue the evening. Joe left his truck at Buffalo Wild Wings and rode with Oscar, J.J., and Roger in Oscar's Chevrolet Tahoe.

The group stayed at Aqua Lounge until it closed. Oscar drove Roger, Bobby, and Joe to a residence located at 3112 Northwest 32nd Street so that Bobby could pick up the keys to his truck. Roger and Bobby got out of Oscar's Tahoe and went inside while Oscar and Joe stayed in the Tahoe. Oscar was in the driver's seat, and Joe was behind him in the rear passenger seat talking on his cell phone when someone shot a gun at the Tahoe. The bullet hit Joe in the face, knocking out several of his lower teeth. Oscar looked up and saw Reyes standing in front of the Tahoe with a gun; Reyes said, "Welcome to Northwest 32nd, bitches." Oscar called 911 and drove to a nearby gas station to wait for police.

Reyes lived with his girlfriend Amanda Salas and several other individuals across the street and two houses down from the residence where Joe was shot.

Officer Anthony Stags responded to the 911 call and drove to the gas station. After an EMT arrived to take care of Joe, Officer Stags questioned Oscar about the shooting. Oscar explained that the shooting had taken place at a house located at 3112 Northwest 32nd Street, and Officer Stags drove Oscar to that location. Officer

Stags did not get out of his vehicle, but he shined a light in the direction of the house before returning to the gas station. Oscar also pointed out Reyes's house to the officer.

Joe lost five teeth and the bone that supported them. He required extensive reconstructive surgeries.

### III. FACTUAL SUFFICIENCY OF THE EVIDENCE

In his first issue, Reyes argues that factually insufficient evidence exists that he was the shooter and that he possessed the requisite mental state to support his conviction.

### A. Standard of Review

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of

3

all the evidence, although legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246. Evidence is always factually sufficient when it preponderates in favor of the conviction. *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Watson*, 204 S.W.3d at 417. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id.* We may not simply substitute our judgment for the factfinder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Our deference in this regard safeguards

4

the defendant's right to a trial by jury. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008).

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

## B. Elements of Aggravated Assault

A person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Penal Code Ann. § 22.01(a)(1) (Vernon Supp. 2009). The assault becomes an aggravated assault if the person uses or exhibits a deadly weapon. *Id.* § 22.02(a)(2) (Vernon Supp. 2009).

A person acts intentionally with respect to the nature of his conduct or to a result of his conduct when he has the conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a) (Vernon 2003). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b).

## C. Factually Sufficient Evidence that Reyes was the Shooter and Possessed the Requisite Mental State

Viewing the evidence in a neutral light, favoring neither party, the following evidence supports Reyes's argument that factually insufficient evidence exists to connect him to the shooting. Joe never saw anyone outside of Oscar's Tahoe, and although Oscar saw Reyes holding a gun outside of the Tahoe, Oscar did not see

Reyes actually shoot the gun. Evidence at trial suggested that police did not investigate the residence where Joe had been shot to look for spent bullet casings or other evidence; Crime Scene Officer Bill Yeager testified that he was not asked to process the residence at 3112 Northwest 32nd Street as a crime scene and that a spent bullet casing would be "very, very important" evidence because it could contain fingerprints or could match a recovered firearm. Officer Yeager could not definitively say whether Joe had been shot inside or outside of the Tahoe or that the shooting had occurred somewhere other than the gas station. Neither Bobby nor Roger testified at trial, and no evidence exists that they—or anyone other than Oscar and Joe—heard or saw the shooting. A search of Reyes's home produced no evidence linking him to the shooting. Salas testified that she had lived with Reyes at the time of the shooting and had never seen a gun in the house or Reyes carry a gun. She testified that Reyes had arrived home at 2:39 a.m. on the night of the shooting, and the police records show that Oscar had called 911 at 2:53 a.m. Salas testified that Reyes had talked on the phone for some time when he got home that night but that he had not left the house again.

Reyes points to the above evidence—or lack thereof—and argues that no evidence exists that someone saw him fire a shot, that no physical evidence links him to the shooting, and that no one other than Oscar puts him at the scene of the shooting. However, Oscar's testimony is enough; the jury heard him testify that he saw Reyes standing in front of the Tahoe with a gun after Joe was shot and heard

6

Reyes say, "Welcome to Northwest 32nd, bitches." *See Steadman*, 280 S.W.3d at 246; Johnson, 23 S.W.3d at 9; *see also Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971) (holding testimony of eyewitness alone sufficient to support jury's verdict). The jury was free to believe any or all of the testimony before it. *See Lancon*, 253 S.W.3d at 706; *see also Fuentes v. State*, 991 S.W.2d 267, 271–72 (Tex. Crim. App.) (noting that "to avoid intruding on the jury's role as arbiter of the weight and credibility of the evidence, a factual sufficiency review remains deferential to the jury's verdict"), *cert. denied*, 528 U.S. 1026 (1999). Additionally, Officer Yeager testified that the damage to Oscar's Tahoe was consistent with a bullet entering the driver's side window and exiting the passenger side—which matched Oscar's account of what had happened.

Reyes also argues that factually insufficient evidence exists that he intentionally or knowingly shot Joe because Officer Yeager could not exclude the possibility that the shot fired at the Tahoe ricocheted and hit Joe. Reyes also argues that there was no motive. However, the jury was entitled to infer from the evidence that, by shooting a gun into a vehicle, Reyes had the "conscious objective or desire to engage in the conduct or cause the result" or was "aware that his conduct [was] reasonably certain to cause the result" of injuring Joe. Tex. Penal Code Ann. § 6.03(a), (b) (defining "intentionally" and "knowingly"); *see Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (noting that direct evidence of the requisite mental state is not required); *Leal v. State*, 800 S.W.2d 346, 349 (Tex. App.—Corpus Christi

7

1990, pet. ref'd). Additionally, the State has no burden to prove motive, which is not an essential element of a criminal offense. *See Loudres v. State*, 614 S.W.2d 407, 411 (Tex. Crim. App. 1980).

Viewing the evidence in a neutral light, we find no objective basis for holding that the jury's verdict was clearly wrong or manifestly unjust or that it is contradicted by the great weight and preponderance of the evidence. *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. Rather, the evidence presented at trial was sufficient to support the jury's verdict, and no contrary evidence exists that would render the evidence factually insufficient under the applicable standard of review. *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. Accordingly, we hold that the evidence is factually sufficient to support Reyes's conviction, and we overrule his first issue.

## IV. EFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Reyes argues that his counsel was ineffective for not objecting to the prosecutor's comment on Reyes's failure to testify during the State's closing argument.

### A. Standard of Review

To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different.

8

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).[2]

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable

---

[2] Because, as set forth below, the record before us does not support a finding that Reyes's defense counsel was ineffective under *Strickland*'s first prong, we do not include an analysis of *Strickland*'s second prong. *See Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069 (providing that appellate courts need not address both prongs of the inquiry if the defendant makes an insufficient showing on one prong).

professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

## B. Counsel Not Ineffective

Here, Reyes did not testify at trial. During the State's closing argument, the prosecutor argued,

> [Reyes] lived across the street. As the defense counsel pointed out in their questioning, [Oscar] had to drive by [Reyes's] house to get to the driveway where they stopped, giving [Reyes] enough time to walk from his car or his home and walk up to the driveway after [Roger and Bobby] went inside and shoot twice. Why? I have no idea. And I don't want you to go back in the room and try to figure out why, because the only person who knows why is the Defendant, and that's why, under the law in Texas, the State is not required to prove that as an element of the offense.

Reyes did not object to the State's argument.

Reyes filed a motion for new trial but did not raise the issue of ineffective assistance in his motion. The record is silent as to defense counsel's reasons for not objecting to the State's closing argument. Generally, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *Edwards v. State*, 280 S.W.3d 441, 445 (Tex. App.—Fort

10

Worth 2009, pet. ref'd). Reyes even points out on appeal that "[p]ossibly counsel did not want to call attention to the State's argument."

Based on the record before us, in light of the strong presumption of reasonable professional assistance by defense counsel, and in the absence of any opportunity for defense counsel to explain his motive for not objecting to the State's closing argument, we cannot say that Reyes has met his burden of showing by a preponderance of the evidence that his trial counsel's representation fell below the standard of prevailing professional norms. *See Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066; *Rylander*, 101 S.W.3d at 110; *Thompson*, 9 S.W.3d at 813; *Edwards*, 280 S.W.3d at 445; *see also Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (stating that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective"). We overrule Reyes's second issue.

## V. CONCLUSION

Having overruled Reyes's two issues, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 22, 2010

11